IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| WEST LIBERTY FOODS, L.L.C. | ) CASE NO.  10-cv-146 |
| Plaintiff, | ) |
| | ) |
| v. | ) **PLAINTIFF'S RESISTANCE TO** |
| | ) **DEFENDANT'S  MOTION TO** |
| MORONI FEED COMPANY, | ) **COMPEL ARBITRATION** |
| Defendant. | ) |

Plaintiff West Liberty Foods, L.L.C. ("Plaintiff" or "WLF") hereby submits its

Resistance to the Motion to Compel Arbitration filed by Defendant Moroni Feed Company

("Defendant" or "Moroni")

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................2

II. ARGUMENT ...............................................................................................................2

   A.  The Legal Standard ...............................................................................................2

   B.  There is No Enforceable Agreement to Arbitrate ........................................................5

   C.  Defendant is Not Entitled to Attorney Fees .................................................................8

III.  CONCLUSION ..........................................................................................................10

I. **INTRODUCTION**

In a sixteen page memorandum, expressing outrage at a lawsuit claimed to be in "bad faith" (p. 15) and "in direct violation of the parties' agreement to arbitrate" (p. 15), and asserting that "there is no dispute" that there is a valid written arbitration agreement (p. 10), Moroni fails to discuss or even to disclose to the Court the paragraph in the Agreement that <u>specifically addresses</u> the issue to be decided by the Court, namely; the paragraph that enumerates those portions of the contract that survive termination and, by exclusion, those terms of the contract which do not. Moroni also fails to correct a material misstatement in one of the "warning letters" it sent to WLF; the false claim that WLF drafted the agreement in question and, as such, ambiguities in the agreement are to be resolved against WLF.

As outlined in this Resistance, the truth is that the Agreement has specific language reflecting the parties' intent that the provision requiring mandatory arbitration would not survive termination of the agreement, and that Moroni itself drafted that language.

After assessing the true landscape of the present dispute, and considering the facts and law summarized below, the Court should deny Moroni's Motion in its entirety.

II. **ARGUMENT**

A. **The Legal Standard**

The purpose of the Federal Arbitration Act ("FAA") was to "place arbitration agreements upon the same footing as other contracts". As such, in considering whether to compel arbitration in a particular case, the court must apply "ordinary contract principles" to determine whether the parties agreed to arbitrate the dispute at issue, and

in doing so, "state contract law guides the court's analysis when considering the validity of an arbitration agreement."  See North Central Construction, Inc. v. Siouland Energy & Livestock Coop., 232 F. Supp.2d 959, 962 (N.D. Iowa 2002) (internal citations omitted).

In performing this analysis, "the court employs a two-part inquiry to determine simply whether the parties have entered a valid agreement to arbitration and, if so, whether the existing dispute falls under the coverage of the agreement."  See id. at 963. It is well-established that "arbitration is a matter of contract and parties cannot be compelled to arbitrate a question which they have not agreed to arbitrate."  See Bullis v. Bear, Stearns & Co., 553 N.W.2d 599, 601-02 (Iowa 1996); Accord Cade v. Zions First National Bank, 956 P.2d 1073, 1076-77 (Utah Ct. App. 1998) (citing AT&T Tech., Inc. v. Communications. Workers, 475 U.S. 643, 648 (1986)).

Accordingly, the court "must first conclude that arbitration is a remedy which has been bargained for by the parties."  See Cade, 956 P.2d at 1077.  Moreover, "when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."  See Riley Manuf. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995)).

> In determining whether an agreement to arbitrate exists, it must be remembered that policies supporting liberal enforcement of arbitration agreements inhere only once the arbitration agreement is established.                                        …
>
> In other words, the presumption in favor of arbitration does not create a presumption in favor of finding that an agreement to arbitrate actually exists.

See Kenny v. Rich, 186 P.3d 989, 999 (Utah Ct. App. 2008) (emphasis added) (internal citations omitted).

3

> When parties agree to arbitrate, they waive the substantial right
> to judicial resolution of their disputes. Consequently, the policy
> of liberally construing agreements in favor of arbitration is
> conditioned upon the prior determination that arbitration is a
> remedy freely bargained for by the parties and which provides a
> means of giving effect to the intention of the parties.

See McCoy v. Blue Cross and Blue Shield of Utah, 20 P.3d 901, 904-05 (Utah 2001)(also stating: "Because parties to binding arbitration waive substantial rights to formal public adjudication of this disputes, the Act demands, as a minimum threshold for its enforcement, direct and specific evidence of an agreement between the parties.").

"Arbitration is a contractual remedy for the settlement of disputes," and as such, the parties "are free to structure their agreement in any manner they desire." See Peterson & Simpson v. IHC Health Services, Inc., 217 P.3d 716, 720 (Utah 2009).

> We respect the parties' freedom to contract by enforcing
> arbitration agreements according to their terms and ensuring
> that arbitration proceedings are conducted in the manner to
> which the parties have agreed.
>
> As with any contract, we determine what the parties have
> agreed upon by looking first to the plain language within the four
> corners of the document.

See id. (internal citations omitted); See also OHI (Iowa) Inc. v. USA Healthcare-Iowa, LLC, 780 N.W.2d 248 (table), 2010 WL 447112 at * 3 (Unpublished Disposition - Final Publication Decision Pending) ("Arbitration is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. They may limit by contract the issues which they will arbitrate.")(internal ellipses omitted) (citing Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).

"The parties' intent concerning whether a particular issue should be arbitrated is a question of law for the court, based on the contract entered into by the parties."   OHI, 2010 WL 447112 at * 3 (*citing* Arjijo v. Prudential Ins. Co., 72 F.3d 793, 797 (10th Cir. 1995)).

Ignoring the clear language in the Agreement to the contrary (which is set forth below), Defendant relies on the "general rule", which generally allows parties to enforce an arbitration agreement for a dispute that arises out of a contract after the contract has been terminated.  Additionally, in citing the applicable American Jurisprudence provision at pages 12-13 of its Memorandum, Defendant has the temerity to omit from that citation the very next (and final) sentence of the section – which states:

> However, the opposite is true where the parties have come to an express or implied agreement that the arbitration clause will not survive the termination of the contractual agreement.

See 4 Am. Jur. 2d *Alternative Dispute Resolution* § 57 (2010); See also 4 Commercial Arbitration § 140:11 (2010) (stating that if a contract containing an arbitration provision has expired, "that agreement should be scrutinized to ascertain if the obligation to arbitrate survived termination of the contract" and that if, "after reading the whole agreement" there is something which indicates that the duty to arbitrate ends with the contract, then the "general rule" does not apply).

**B.     There is No Enforceable Agreement to Arbitrate.**

In its Memorandum, Defendant recites Section 17 of the Agreement, but utterly fails to mention, let alone discuss or analyze, Section 20, defining the "Term" of the Agreement and specifically enumerating those provisions of the Agreement that would survive termination, as follows:

> Despite termination of this Agreement at any time for any reason pursuant to this Section, the provisions herein relating to delivery of goods (Section 2), transfer of title (Section 3), authorization to sell and marketing fees (Section 4), continuing food guarantee (Section 7), processing and quality assurance (Section 8), residues (Section 9), remedies (Section 16), and costs of litigation and attorney's fees (Section 17), shall remain in full force and effect with respect to any Products packaged in bags or boxes with Western Sales logos, labels, trademarks or trade names.

See Agreement, Section 20 at Exhibit A, Document 7-2, page 9 of 17. The Agreement also contains broad language regarding post-termination duties relating to trade secrets and proprietary information, non-solicitation of employees, and the assumption of third-party agreements.

Section 20 of the Agreement, properly construed, demonstrates two things and leads to one conclusion.

First, it demonstrates that the parties specifically considered the issue of what terms and conditions survived termination of the Agreement, and that Moroni, as drafter of the above language, knew how to draft a broadly worded survival clause (such as the provision regarding confidential information).

Second (and as a corollary to the first point), the specific language enumerating those provisions which "survive" termination of the Agreement, imply that the any section not enumerated does not survive[1].

Application of these principles establishes that no intent to include "Arbitration" in the survival paragraph can be found, as only "Costs and Attorneys Fees" from Section 17

---

[1]   "The expression of one thing of a class implied the exclusion of others not expressed." Maytag Company v. Alward, 112 N.W.2d 654, 655 (Iowa 1962)(holding that this rule applies in the construction of contracts as well as statutes); See also, 17A C.J.S. Contracts § 327.

are specifically referenced, and that even if those parts of Section 17 survive termination, they survive only in a limited circumstance, that is; "with respect to any Products packaged in bags or boxes with Western Sales logos, labels, trademarks, or trade names". The limited survival of Section 17 does not apply to the present dispute regarding alleged "up-charges" and the "accrual account" which form the basis of the dispute between the parties. <u>See</u> Affidavit of Dan Waters at ¶ 7.

The decision of the parties to agree to mandatory mediation/arbitration only during the term of their Agreement makes sense. If a dispute arose between the parties during the term of the Agreement, it would be best for their ongoing relationship to attempt to mediate the dispute instead of engaging in litigation. On the other hand, after the termination of the Agreement, no similar rationale exists for requiring mediation prior to arbitration or for the parties to forgo their right to have any dispute resolved in a court of law.

Finally, and contrary to Defendant's bare assertion in its Exhibit F regarding interpretation of the survival language ("…it will be construed against your client, as the party who drafted the Agreement"), it was in fact Moroni, not WLF, who drafted the language in question. <u>See</u> Waters Aff. at ¶ 4-6 and Exhibits A and B to that Affidavit, all of which are attached hereto and incorporated herein by this reference. As such, if there is any ambiguity in the contract as to whether there was an enforceable agreement to arbitrate, that ambiguity should be construed against Moroni, the drafter. <u>See, e.g.</u>, <u>Ellsworth v. American Arbitration Association</u>, 148 P.3d 983, 988 (Utah 2006); <u>Dickinson v. Hubbell Realty Co.</u>, 567 N.W.2d 427, 430 (Iowa 1997) ("When there are ambiguities in the contract, they are <u>strictly</u> construed against the drafter.") (emphasis added).

7

Thus, even if this Court finds that the survival clause does not clearly exclude an agreement to arbitrate the present dispute, any resulting ambiguity must be construed against Defendant and in favor of the reasonable interpretation by Plaintiff, and Defendant's Motion to Compel Arbitration must be dismissed by this Court.

## C. Defendant is Not Entitled to Attorney Fees

First and foremost, Defendant is not entitled to recover its attorneys' fees because, as set forth above, its Motion to Compel Arbitration must fail – and there is no authorization in any Agreement, statute, common law or otherwise to award attorneys' fees to a losing party.

Second, there are substantial questions regarding any claimed entitlement to fees or expenses in the case at hand.  As pointed out, the limited survivability provision set forth in Section 20 of the Agreement does not apply to the disputed "up-charges" or the escrow account which is at the heart of the present dispute.  Moreover, it is doubtful that the Utah bad faith statute applies to this case[2].

However, even if we assume for the sake of this Motion that both of the above could be proven by Defendant, an award of fees and costs is still impermissible because Defendant has not established the required elements under the Utah statute cited in its pleadings.

---

[2]   See e.g., Ferrell v. West Bend Mutual Insurance Co., 393 F.3d 786, 796-97 (8th Cir. 2005) (stating that even when one state's law governs the substantive issues, attorney's fees may be considered a "procedural matter" and governed by a different state's law) (citing City of Carter Lake v. Aetna Cas. & Sur. Co., 604 F.2d 1052, 1062 (8th Cir.1979) for the proposition that "where Nebraska was forum and Iowa law governed contract, but Nebraska Supreme Court stated that attorney fee statute was 'procedural', the law of Nebraska applied to issue of attorney fees").

The Utah Supreme Court has held that in order to award attorney fees, a trial court "must determine *both* that the losing party's action or defense was without merit *and* that it was brought or asserted in bad faith." See Still Standing Stable, LLC v. Allen, 122 P.3d 556, 559 (Utah 2005) (emphasis in original). "The statute is narrowly drawn. It was not meant to be applied to all prevailing parties in all civil suits." Cady v. Johnson, 671 P.2d 149, 151 (Utah 1983). The Utah Supreme Court also stated that it was important to "remind trial courts … that fees should therefore be awarded only upon specific evidence of bad faith." See Still Standing Stable, 122 P.3d at 560-61.

Defendant cannot show any "specific evidence" of any bad faith by Plaintiff in asserting its rights pursuant to a well-reasoned interpretation of the Agreement which was drafted by Defendant.[3]

Additionally, although not relevant to the instant Motion, the reason that Plaintiff did not immediately serve the Complaint on Defendant after it was filed is that Plaintiff flatly rejected Defendant's demands and heard nothing further from Defendant – which lead Plaintiff to believe that the dispute may have been resolved and the declaratory judgment action may not be necessary.

---

[3] At page 15, footnote 1 of its Memorandum, Defendant briefly addresses Iowa law regarding fees for claims asserted in bad faith. However, Defendant is also not entitled to attorneys fees under Iowa law because Defendant has not submitted any evidence whatsoever that Plaintiff's actions have been in bad faith, oppressive, or for the purpose of harassing or injuring Defendant. See Markey v. Carney, 705 N.W.2d 13, 26 (Iowa 2005); Hockenberg Equip. Co., v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc., 510 N.W.2d 153, 159-60 (Iowa 1994) (holding that a party seeking common law attorney fees must prove that the culpability of the other party's conduct "exceeds the willful and wanton disregard for the rights of another; such conduct must rise to the level of oppression or connivance to harass or injure another.").

It is reasonable that Plaintiff did not want to pursue further adjudication of the matter when it thought that Defendant had accepted its position; Plaintiff was optimistic that this lawsuit could be voluntarily dismissed before service of the Complaint.

Finally, as this Court is well-aware, Plaintiff is allowed 120 days to serve the Complaint under the Federal Rules of Civil Procedure, and Plaintiff did serve Defendant within that time period after Plaintiff learned that Defendant had not abandoned its claims.

Accordingly, no matter how many times Defendant's counsel asserted that he was right and no matter how many letters or emails Defendant sent, Plaintiff's failure to voluntarily dismiss its claim was not in bad faith, oppressive, or harassment, and does not entitle Defendant to its fees incurred herein.

## III.   CONCLUSION

In light of the information and arguments set forth above, Plaintiff West Liberty Foods, L.L.C. respectfully requests that this Court DENY Defendant's Motion to Compel Arbitration and Stay the Lawsuit in its entirety, including Defendant's alternative request to dismiss the lawsuit in favor of arbitration and Defendant's request for attorneys fees.


Date:  June 9, 2010

/s/ David A. Tank

David A. Tank (AT0007732)
Angela E. Dralle (AT0002077)
DORSEY & WHITNEY LLP
801 Grand Avenue, Suite 3900
Des Moines, Iowa  50309
Tel: (515) 283-1000, Fax: (515) 283-1060
Email:  tank.dave@dorsey.com
          dralle.angela@dorsey.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that on <u>June 9, 2010</u>, the foregoing instrument was electronically filed with the Court using the CM/ECF system and served upon all parties to the above case and/or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings:

**By:** Electronic Service **AND/OR**
**By:** _____ U.S. Mail        _____ FAX
_____ Hand                 _____ Overnight
Delivered                  Courier
_____ E-mail               Othe
_____                      _____ r        _____

/S/   Angela E. Dralle

<u>COPIES TO:</u>
Gregory A. Witke
Thomas J. Joensen
801 Grand Avenue, Suite 3700
Des Moines, Iowa  50309-8004
ATTORNEYS FOR DEFENDANT