IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| WEST LIBERTY FOODS, L.L.C.,<br><br>  Plaintiff,<br><br>vs.<br><br>MORONI FEED COMPANY,<br><br>  Defendant. | No. 4:10-cv-00146 – JEG<br><br>**O R D E R** |

  This matter comes before the Court on a Motion to Compel Arbitration and Stay This Litigation brought by Defendant Moroni Feed Company (Moroni). Plaintiff West Liberty Foods, L.L.C. (West Liberty) resists. A hearing on the motion was held on July 16, 2010. Attorney Stanley Preston represented Moroni, and attorney David Tank represented West Liberty. The matter is fully submitted and ready for disposition.

**I. BACKGROUND**

  On May 1, 2006, West Liberty and Moroni entered into a marketing agreement whereby West Liberty became the exclusive marketing agent for Moroni's products, which included turkeys, turkey products, and other poultry and meat products.[1] After operating under the marketing agreement for three-and-a-half years, Moroni notified West Liberty that it was electing to terminate the marketing agreement effective December 31, 2009, as allowed by terms found therein. After the marketing agreement's termination, Moroni alleged that West Liberty had breached the terms of the marketing agreement in its handling of customer up-charges through a market accrual account. Moroni sought to mediate or arbitrate the dispute; however, West Liberty refused, stating that it was not obligated to mediate or arbitrate because the marketing agreement had been terminated.

  Following Moroni's demand that West Liberty mediate or arbitrate, West Liberty filed this declaratory action, seeking a declaration that it did not breach the marketing agreement. Moroni followed by filing the instant pre-answer Motion to Compel Arbitration.

---

  [1] The record indicates that the marketing agreement was drafted by counsel for Norbest, Inc., and that at the time the agreement was drafted and signed, Moroni owned more than fifty percent of Norbest, Inc.

The marketing agreement included the following relevant provisions:

> 17. <u>Arbitration; Costs and Attorney's Fees</u>.  In the event that either party claims that the other party has breached this Agreement in any way and the parties cannot resolve the dispute through negotiations, they shall attempt to resolve the dispute through the assistance of a neutral third-party mediator.
>
> If the dispute is not resolved by the use of a mediator, then any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The award in such arbitration shall be a reasoned award.  The parties shall have the opportunity to pursue any discovery in the arbitration which they reasonably believe is necessary to arbitrate all of the claims and defenses in the arbitration.
>
> If [West Liberty] brings a demand for arbitration, the arbitration shall be conducted in Salt Lake City, Utah.  If Moroni brings a demand for arbitration, the arbitration shall be conducted in Des Moines, Iowa.
>
> The arbitrator(s) may award to the prevailing party any costs and expenses arising out of or caused by the arbitration, together with a reasonable attorney's fee expended or incurred by it in such proceedings.
>
> 20. <u>Term</u>. . . .  Despite termination of this Agreement at any time for any reason pursuant to this Section, the provisions herein relating to delivery of goods (Section 2), transfer of title (Section 3), authorization to sell and marketing fees (Section 4), continuing food guarantee (Section 7), processing and quality assurance (Section 8), residues (Section 9), remedies (Section 16), and costs of litigation and attorney's fees (Section 17), shall remain in full force and effect with respect to any Products packages in bags or boxes with Western Sales logos, labels, trademarks or trade names.

Def.'s App. Ex. A.

In addition to the above-quoted language of survival, section 20 also prohibits the parties from using or divulging trade secrets and proprietary information at any time after termination of the marketing agreement.  Section 14, which covers confidentiality, less broadly prohibits the parties from divulging trade secrets or proprietary information for a specific period of five years after termination of the marketing agreement.  Section 16, covering remedies, indicates that Moroni's obligations to indemnify, defend, hold harmless, and bear all of West Liberty's losses related to the marketing agreement survive termination of the marketing agreement.

## II.   DISCUSSION[2]

### A.   Motion to Compel Arbitration

West Liberty argues that there is not a valid arbitration agreement. It asserts that the survival clause did not preserve the arbitration clause. Moroni argues that the arbitration clause survived the termination of the marketing agreement and that this dispute is within the scope of the arbitration clause because the dispute arises from the marketing agreement.

---

[2] The marketing agreement includes a choice of law provision providing that the marketing agreement "shall be construed in accordance with the law of the State of Utah." Def.'s App. Ex. A. Moroni asserts that the choice of law provision survives termination, and Utah law should apply. West Liberty argues that the choice of law provision does not apply and that all aspects of this dispute are governed by common law. Federal Courts apply the choice of law rules of the forum state. John T. Jones Constr. Co. v. Hoot Gen. Constr. Co., 613 F.3d 778, 782 (8th Cir. 2010). Thus, the Court applies Iowa's choice of law rules. Iowa's choice of law rule for contracts directs the Court to determine the applicable law by the intent of the parties as evidenced by a choice of law provision or, that failing, of the forum with the "most significant relationship" to the contract. Id. at 782-83 (citing Gabe's Constr. Co., Inc. v. United Capitol Ins. Co., 539 N.W.2d 144, 146 (Iowa 1995) ("We determine choice of law issues in [contract] cases by the intent of the parties or the most significant relationship test.")). Courts have applied Iowa law to determine the existence of a contract without regard to a choice of law provision to decide whether a choice of law provision should apply. See id. at 783 (citing Flanagan v. Consol. Nutrition, L.C., 627 N.W.2d 573, 579 (Iowa App. 2001) (determining existence of contract without regard to choice of law provision indicating Iowa law in a purported contract)). However, the Court need not decide the existence of a contract to determine the applicable law nor analyze whether the choice of law provision in the terminated marketing agreement controls because the Court finds that, based on the record currently before the Court, Utah law would apply under the most significant relationship test.

Iowa courts apply the choice of law analysis based on the Restatement (Second) of Conflicts of Laws § 188. Cole v. State Auto. & Cas. Underwriters, 296 N.W.2d 779, 781 (Iowa 1980). Section 188 states that absent an effective choice of law provision, the rights and duties of the parties to a contract are determined by the law of the state with the most significant relationship to the parties and transaction. Restatement (Second) of Conflicts of Laws § 188 (1971). Section 188 directs the Court to evaluate the following factors in determining which state's laws to apply: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Id. On the record currently before the Court, the only factor that does not appear to be in equipoise is the first factor since the parties contracted in Utah. Thus, under either the choice of law provision or choice of law rules, the result is the same, and Utah law would control. Even so, this dispute turns on federal law and policy, and the Court's analysis reveals that application of either Iowa or Utah law would render the same outcome on the issues presented herein. Cf. Modern Equip. Co. v. Cont'l W. Ins. Co., 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) (noting that a choice of law determination is only made when a true conflict exists between the possible governing laws).

3

The Federal Arbitration Act (FAA) directs that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); see also Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) ("Generally, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks and citations omitted)). When a party moves to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of the agreement." Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004). "[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995)).

The legal basis for West Liberty's argument – that this motion to compel arbitration should fail due to the lack of a valid arbitration agreement – is misplaced. Legal inquiries into the existence of an arbitration agreement, whereby the presumption in favor of arbitration falls away, look at whether the parties agreed that an arbitration clause would ever go into effect in the first place. See Koch v. Compucredit Corp., 543 F.3d 460, 465 (8th Cir. 2008) (finding that the district court properly addressed first whether contract was validly assigned to determine parties to an agreement containing an arbitration clause); McCoy v. Blue Cross & Blue Shield of Utah, 20 P.3d 901, 905 (Utah 2001) (holding that the threshold inquiry for determining whether arbitration should be enforced is direct and specific evidence of an agreement between the parties); cf. Clinton Nat'l Bank v. Kirk Gross Co., 559 N.W.2d 282, 284 (Iowa 1997) ("[E]vidence of an alleged waiver [to arbitrate] must be compelling."). There is no dispute that the parties agreed to the arbitration clause, that the arbitration clause was in effect during the term of the marketing agreement, and that the arbitration clause would have covered the instant dispute had the dispute arisen before termination of the marketing agreement.

4

The issue in this case is not whether the parties agreed to arbitrate in the first place; rather, the issue is whether the parties agreed that the obligation to arbitrate would end upon termination of the marketing agreement. "Even if the underlying [marketing] agreement was terminated . . . , such a termination does not necessarily release the parties from their obligations under that agreement, including the obligation to arbitrate." Koch, 543 F.3d at 465. Federal courts have devised specific rules that control the determination of whether an arbitration clause survived termination of a contract. "[T]here is a 'presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication.'" Id. (quoting Litton Fin. Printing v. NLRB, 501 U.S. 190, 204 (1991)). The Tenth Circuit, in addressing this issue, stated,

> Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption: "In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 255, 97 S. Ct. 1067, 51 L. Ed. 2d 300 (1977). Thus, when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired. See id. (holding that claims for severance pay by workers who were discharged after their collective bargaining agreement expired were subject to the continuing force of the prior arbitration clause). The presumption in favor of continuing arbitrability, however, disappears in either of two situations: first, if the parties expressly or *clearly imply* an intent to repudiate post-expiration arbitrability, and second, if the dispute cannot be said to arise under the previous contract. See id. at 254-55.

Riley, 157 F.3d at 781 (emphasis added). In a more general expression of the prevailing rule, 4 Am. Jur. Alt. Disp. Res. § 57 (2010), states,

> Although it is created by contract, the duty to arbitrate does not necessarily end upon contract termination. Absent a clear intent to the contrary, the duty to arbitrate survives termination of the contract. It is presumed that parties intended that arbitration forum for dispute resolution provided in agreement will survive termination of agreement as to subsequent disputes arising thereunder, whether its cessation was result of expiration of its term, exercise of unilateral termination option, or breach. The termination of the contract prior to a demand for arbitration will generally have no effect on such demand, provided that the dispute in question either arose out of the terms of the contract or arose when a broad contractual arbitration clause was still in effect. However, the opposite is true where the parties

> have come to an express or implied agreement that the arbitration clause will not survive the termination of the contractual agreement.

(internal footnotes omitted).

Here, there is no express agreement between the parties regarding the post-termination efficacy of the arbitration clause. Thus, the Court must determine whether survival of the arbitration clause was negated by clear implication. See Riley, 157 F.3d at 781. In doing so, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter, giving healthy regard for the federal policy favoring arbitration." Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist. #36, 503 F.3d 709, 711 (8th Cir. 2007) (quoting AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 780 (8th Cir. 2001)).

In support of its argument that the contract evinces an implied agreement that the arbitration clause would not survive the termination of the marketing agreement, West Liberty asserts that Moroni, as owner of Norbest, drafted the agreement and, thus, any ambiguities must be construed against Moroni. The record, however, does not support West Liberty's assertion. Moroni and West Liberty were independently represented by legal counsel when entering into the marketing agreement. West Liberty's outside counsel reviewed and suggested changes to the marketing agreement. The attorney for Norbest drafted the agreement, arguably in the interests of Norbest, at a time when Moroni held a controlling interest in Norbest but did not represent Moroni as Moroni was represented separately. On this record, the Court "decline[s] to apply the doctrine of *contra proferentum* to this case due to the relatively equal bargaining strengths of both parties and the fact that [West Liberty] was represented by sophisticated legal counsel during the formation of the [marketing] agreement." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997); see also Omega Healthcare Investors, Inc. v. Lantis Enters., Inc., 256 F.3d 774, 777 (8th Cir. 2001) ("The rule that an ambiguity should be construed against the drafter is normally not applied in situations where the agreement has been reached through extensive negotiations and the parties are sophisticated and represented by counsel."); Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954 (8th Cir. 2000) ("[Non-drafting party]'s lawyer reviewed the form and [] suggested changes that were

ultimately incorporated into the Agreement. This, plus the equal bargaining power of the parties, made a *contra proferentum* instruction inappropriate.").

West Liberty argues that principles of contract construction show that the arbitration agreement survived wholly intact *only* as to packed products with Western Sales markings, thus evincing a clearly implied agreement that the arbitration clause would otherwise terminate contemporaneously with the marketing agreement. West Liberty asserts that the maxim *expressio unius est exclusio alterius* is dispositive. See Duke v. Graham, 158 P.3d 540, 544 (Utah 2007) ([T]he inclusion of one thing implies the exclusion of the alternative."); Maytag Co. v. Alward, 112 N.W.2d 654, 655 (Iowa 1962) ("The expression of one thing of a class implied the exclusion of others not expressed."). However, focusing on only one maxim of contract interpretation and construction is inadequate in determining the intent of the parties relative to the survival of the arbitration clause. "The determination of the intent of the parties at the time they entered into the contract is the cardinal rule of contract interpretation." Nevadacare, Inc. v. Dep't of Human Servs., 783 N.W.2d 459, 466 (Iowa 2010); accord Glenn v. Reese, 225 P.3d 185, 188 (Utah 2009) ("Well-accepted rules of contract interpretation require that [the court] examine the language of a contract to determine meaning and intent."). "As with any contract [the court] determine[s] what the parties have agreed upon by looking first to the plain language within the four corners of the document." Peterson & Simpson v. IHC Health Servs., Inc., 217 P.3d 716, 720 (Utah 2009). "When interpreting the plain language, '[the court] look[s] for a reading that harmonizes the provisions and avoids rendering any provision meaningless.'" Id. (quoting Encon Utah, LLC v. Fluor Ames Kraemer, LLC, 210 P.3d 263 (Utah 2009); accord Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents, 471 N.W.2d 859, 862 (Iowa 1991) (holding that contracts are interpreted as a whole and preference is given to interpretations that give all terms a reasonable, lawful, and effective meaning).

A review of the plain language of the marketing agreement does not reveal a clear implication that the parties agreed that the entire arbitration clause would survive only as to packed products and otherwise expire after termination of the marketing agreement. The language of survival that purportedly applies to the entire arbitration clause is inconsistent with the actual language of the arbitration clause. To wit, the marketing agreement states that "costs of litigation and attorney's

fees (Section 17) shall remain in full force" despite termination of the marketing agreement, whereas the arbitration clause is titled, "17.  Arbitration; Costs and Attorney's Fees."  Def.'s App. Ex. A.  The language of survival does not mention arbitration despite a general reference to section 17.  Furthermore, section 17 does not mention litigation even though the language of survival applying section 17 does.  In the context of the entire agreement there is a strong inference that a drafting miscue occurred in the use of the term "litigation" in section 20; but, the Court ultimately cannot and need not reach that conclusion.  Rather, on this record the Court finds that the plain language of these statements cannot be easily harmonized without rendering meaningless other statements in the marketing agreement.  Accordingly, the Court must conclude that the marketing agreement is ambiguous when attempting to determine the parties' intent regarding post-termination survival of the arbitration clause.

If the language is found to be ambiguous, normally the Court would then look to other principles of contract construction to determine the parties' intent.  Here, however, the Court must find a clear implication of an agreement that the arbitration clause would expire with the termination of the marketing agreement.  Koch, 543 F.3d at 465.  Finding a clear implication in ambiguous language is not only illogical, but it is in tension with the general rule presuming post-expiration arbitration.  However, this tension is relieved by the rule that instructs the Court to resolve any ambiguities in favor of arbitration.  "[W]hen contract language is ambiguous or unclear, a 'healthy regard' for the federal policy favoring arbitration requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1165 (8th Cir. 1984) (quoting Moses H. Cone Mem. Hosp., 460 U.S. at 24-25; see also, Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 798 (10th Cir. 1995) (noting that "to acknowledge the ambiguity is to resolve the issue" in favor of arbitrability).  Therefore, the Court finds that this dispute must be referred to arbitration.

**B. Stay**

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved

> in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The Court recognizes a split of authority on this issue as outlined in Precision Press Inc. v. MLP U.S.A., Inc., 620 F. Supp. 2d 981, 995 (N.D. Iowa 2009):

> There is a split in the federal courts of appeals on the issue of whether the dismissal of an action is permitted by the Federal Arbitration Act. Compare Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), and Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."), and Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that section three of the FAA "was not intended to limit dismissal of a case in the proper circumstances."), and Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988) (holding that section three of the FAA does not limit a district court's authority to grant a dismissal of a case), with Cont'l Cas. Co. v. Am. Nat. Ins. Co., 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright.") (citing Tice v. Am. Airlines, Inc., 288 F.3d 313, 318 (7th Cir. 2002)), and Lloyd v. HOVENSA, L.L.C., 369 F.3d 263, 268-69 (3rd Cir. 2004) (holding that "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."), and Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994) (holding that district court erred in dismissing case in which defendant moved for a stay pending arbitration under 9 U.S.C. § 3, and should have instead entered stay). The Eighth Circuit Court of Appeals has not yet weighed in on the issue.

While it is accurate to say "the Eighth Circuit Court of Appeals has not yet weighed in" on a precise dispute over the authority to dismiss rather than stay a case wherein all of the issues are subject to arbitration, that court has given repeated approval to the legal conclusion a stay is compelled by the statute.[3] See Madol v. Dan Nelson Auto. Group, 372 F.3d 997, 1000 (8th Cir. 2004) (citing Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 695 (8th Cir. 1994)). This is the posture despite the fact the FAA authorizes a "stay of the trial of the action," and if all issues in a case are arbitrable then no trial of the action would ever occur and any stay imposed would not

---

[3] In fact, Judge Bennett reaches that result in Precision Press Inc., 620 F. Supp. 2d at 995.

9

accomplish its object of "stay[ing] the trial of the action."  9 U.S.C. § 3.  In light of the general acceptance in this circuit that only a stay is authorized, this case must remain on the Court's docket during arbitration with the expectation the parties will advise the Court if further proceedings herein are required after arbitration or, if not, that the case may then be dismissed.

### C.  Attorney's Fees

Moroni argues that the Court should award its attorney's fees based on a contract provision and Utah's bad faith statute.  Neither argument is availing.

The contractual fee provision provides that "[t]he arbitrator(s) may award damages to the prevailing party any costs and expenses arising out of or caused by the arbitration, together with a reasonable attorney's fee expended or incurred by it in such proceedings."  Def.'s App. Ex. A.  The Court need not decide the scope of the surviving attorney's fees provision because, under the terms of the provision, this Court may not award Moroni attorney's fees because this Court is not an arbitrator.

Moroni is not entitled to statutory attorney's fees.  Utah's bad faith statute provides that a prevailing party may recover attorney's fees if an action against it is without merit and brought in bad faith.  Utah Code § 78B-5-825.  "To be a prevailing party a party 'must obtain at least some relief on the merits' of the party's claim of claims."  Ault v. Holden, 44 P.3d 781, 793 (Utah 2002) (quoting Crank v. Utah Judicial Council, 20 P.3d 307, 317 (Utah 2001)).  Moroni is not a prevailing party even if the Court orders arbitration because the Court has not considered the merits of the claims in this action nor awarded any relief on the merits.  Furthermore, the facts do not support the assertion that West Liberty brought the claim in bad faith.  Despite the general rule that arbitration clauses survive termination, West Liberty advanced an argument under a recognized exception to the general rule based on its reading of ambiguous language in the marketing agreement.  Such an argument, though ultimately unavailing, does not evidence bad faith.  Also, despite Moroni's assertions to the contrary, West Liberty's delay in serving notice of this lawsuit is not specific evidence of bad faith.  West Liberty plausibly avers that the delay was caused because West Liberty held out

hope that the dispute might be resolved without the necessity of serving notice. Thus, Moroni has not demonstrated that it is entitled to attorney's fees under Utah Code § 78B-5-825.[4]

Accordingly, the Court will not award Moroni's attorney's fees because Moroni is not a prevailing party, and there is no evidence in the record before the Court to support a conclusion that this lawsuit was brought in bad faith.

## III.   CONCLUSION

Based on the foregoing, Defendant Moroni Feed Company's Motion to Compel Arbitration and Stay This Litigation (Clerk's No. 7) must be **granted in part and denied in part**. Moroni's request that this matter be stayed while the case is referred to arbitration is **granted**; Moroni's requests for attorney's fees and costs must be **denied**. Upon completion of the arbitration proceedings, the parties shall promptly advise this Court if further proceedings are necessary herein or if the matter can then be dismissed.

**IT IS SO ORDERED.**

Dated this 20th day of October, 2010.

*[Signature]*
JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT

---

[4] Likewise, there is no evidence that West Liberty's lawsuit entitles Moroni to attorney's fees under Iowa law. See Markey v. Camey, 705 N.W.2d 13, 26 (Iowa 2005) (attorney's fees may be awarded upon showing that lawsuit was brought in bad faith, is oppressive, or brought to harass or injure other party).